UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60484-CIV-MARRA/JOHNSON

DRAGUTIN PAVLETIC,

Plaintiff,

vs.

BERTRAM YACHT, INC., and
CATERPILLAR, INC.,

Defendants.

_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Bertram Yacht, Inc.'s Motion to Dismiss

Amended Complaint (DE 31).  The motion is fully briefed and ripe for review.  The Court has

carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

Plaintiff Dragutin Pavletic ("Plaintiff" "Pavletic") brings this six-count Amended

Complaint against Defendants Bertram Yacht, Inc. ("Defendant" "Bertram") and Caterpiller, Inc.

("Caterpiller") (collectively, "Defendants").  Specifically, the Amended Complaint asserts a

violation of the Magnuson-Moss Federal Trade Commission Act against both Defendants (count

one); a claim for breach of warranty under the Florida Uniform Commercial Code against both

Defendants (count two); a violation of the Florida Deceptive and Unfair Trade Practices Act

against Caterpiller (count three); a claim for negligent misrepresentation against both Defendants

(count four); a claim for fraud in the inducement against both Defendants (count five) and a

claim for breach of implied warranty of merchantability and fitness against both Defendants

(count six).  The allegations of the Amended Complaint are as follows:

Bertram is in the business of manufacturing, marketing and selling motor yachts to consumers and Caterpiller is the manufacturer and warrantor of yacht engines. (Am. Compl. ¶ ¶ 7-8.)  During the Genoa boat show in 2006, Plaintiff visited Bertram's display and discussed purchasing a yacht with a Bertram employee.  During this discussion, the Bertram employee stated that the Caterpillar C7 engines were the optimal fit for the size, consumption, and average speed of the yacht Plaintiff was interested in purchasing from Bertram. (Am. Compl. ¶ 9.)  In October of 2006, Plaintiff visited Bertram's office in Miami, Florida, where Dick Boehmer, head of Bertram's sales, suggested Caterpiller engines as a better option for the yacht than the standard engine.  Plaintiff relied on this opinion in choosing which engine to install on the yacht. (Am. Compl. ¶ 10.)

On or about December 19, 2006, Plaintiff signed a sales agreement[1] with Bertram for the

---

[1]

The sales agreement states in pertinent part:

11-WARRANTY

1.  All boat hulls and structural components manufactured of fiberglass by Bertram are hereby warranted to the original purchaser and properly registered subsequent owners, to be free of defects in materials and workmanship under normal pleasure boat use and service, for a period of five (5) years from the date of delivery to the first use purchaser.

2. All other components and parts including engines, engine parts, accessories and generators are warranted by their manufacturers; for specific periods as stated on their warranty registration forms.  Purchaser shall look to these manufacturers for any and all warranty claims.

3. . . .

Unless otherwise relating to the installation thereof, this warranty shall not apply to engines or any component parts as purchaser hereby acknowledges that the engines were independently selected by purchaser and that purchaser shall look to the manufacturer of the engines with respect to any and all relating warranty claims.

. . .

5.  UNLESS OTHERWISE EXPRESSLY PROHIBITED BY STATE LAW BERTRAM

2

yacht. (Am. Compl. ¶ 11; Sales Agreement, attached to DE 25 and 31.[2])  Plaintiff's first payment of $100,000.00 towards the construction of the yacht was made on or about December 27, 2006. (Am. Compl. ¶ 12.)  On or about March 7, 2007, Plaintiff made a second payment of $66,666.00 towards the construction of the yacht. (Am. Compl. ¶ 13.)  The yacht was completed on May 29, 2007 and loaded on a ship to be delivered at Pula, Croatia. (Am. Compl. ¶ 14.)  Plaintiff then made the final installment of $232,517.35 on July 5, 2007. (Am. Compl. ¶ 15.)

The engines were delivered, fitted to the yacht, and sea trialed by Bertram and Caterpiller on July 17, 2007. (Am. Compl. ¶ 16.)  Subsequently, in November 2007, the first fifty hours of maintenance were performed on the engines by an authorized repair dealer in Croatia. (Am. Compl. ¶ 17.)   On June 30, 3008, within the first 100 running hours of the engines, Plaintiff began to notice numerous technical defects to the engines. (Am. Compl. ¶ 18.)  From approximately July 4, 2008 to August 2, 2008, Motortech, an authorized Caterpiller repair dealer in Croatia attempted repairs on the engines, during which time Plaintiff was unable to use the yacht and a replacement yacht was not secured for that period. (Am. Compl. ¶ 19.)  During that time period, Caterpiller delivered spare parts to Motortech that were intended to solve the problems with the engines. (Am. Compl. ¶ 20.)

MAKES NO OTHER EXPRESS WARRANTIES AND INTENDS NO IMPLIED WARRANTIES. ANY IMPLIED WARRANTIES IMPLIED AT LAW ARE LIMITED TO THE DURATION OF THIS WARRANTY. IN NO WAY WILL BERTRAM BE LIABLE FOR ANY SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES RESULTING FROM ANY DEFECTIVE CONDITION OR ANY BREACH OF WARRANTY, EXPRESS OF IMPLIED.

(Sales Agreement, attached to DE 25 and DE 31.)

[2] Defendant attached to its motion to dismiss a more legible unsigned exemplar copy of the same sale agreement.

On or about July 28, 2008, Plaintiff sent a letter to Donald Flippen, a customer service employee with Bertram, detailing his continuing issues with the engines and overall discontent. (Am. Compl. ¶ 21.)  That letter was followed up with another letter on July 31, 2008, which detailed for Mr. Flippen the issues with the engines. (Am. Compl. ¶ 22.)  From the period of August 25, 2008 through December 2, 2009, Motortech attempted repairs on the engines on six separate occasions. (Am. Compl. ¶ 23-26.)  Plaintiff then hired yacht surveyor Marin Lovrovic to conduct a full survey on the engines and he provided a written report detailing numerous technical problems with the engines. (Am. Compl. ¶ 30.)  In addition, Veljko Modrusan Bseeng of the Croatian Register of Shipping conducted a survey and provided a written report of the yacht and the engines. (Am. Compl. ¶ 32.)  Motortech again attempted repairs on the engines on December 30, 2009. (Am. Compl. ¶ 31.)

Plaintiff's counsel wrote a letter on April 8, 2010 to Caterpiller demanding final repair of any and all problems and defects with the engines or replacement thereof. (Am. Compl. ¶ 33.)  In June of 2010, Mr. Flippen and another employee of Bertram, Charlie Carricarte, told Plaintiff that problems with Caterpiller engines installed in Bertram yachts had led Bertram to stop installing those engines. (Am. Compl. ¶ 34.)

Technical defects continued through 2009 and persisted to July of 2010 without successful repairs on the part of Caterpiller. (Am. Compl. ¶ 35.)  Plaintiff was "forced" to purchase, at his own expense, new engines to replace the originally installed engines. (Am. Compl. ¶ 36.)  During three years of possession of the yacht, Plaintiff was unable to use the yacht for nearly twelve months due to technical failures of the engines. (Am. Compl. ¶ 37.)  To date, Caterpiller has not reimbursed Plaintiff for the cost of replacing the engines, or the installation of

new engines to the vessel. (Am. Compl. ¶ 38.)

Defendant moves to dismiss counts one, two, four, five and six of the Amended Complaint.  With respect to counts one, two and five, Defendant argues that these claims are all "warranty based" claims and it did not issue a warranty for the Caterpiller engines.  Next, Defendant contends that counts four and five are barred by the economic loss rule.

## II.  Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467

U.S. 69, 73 (1984).

III.  Discussion

A.  Count one

Defendant moves to dismiss the count alleging a violation of the Magnuson Moss act[3] because the warranty it issued to Plaintiff expressly excludes engines and states instead that the engines are warranted by the manufacturer.  Defendant notes that the Amended Complaint alleges that Caterpiller issued a warranty for their engines, and after a claim was made to Caterpiller, Caterpiller, through its repair representative, made efforts to repair the engine. (Mot. at 7.)  In response, Plaintiff points out that the warranty issued by Defendant covers the installation of engines and the Amended Complaint alleges a breach of warranty "may have occurred with respect to the installation of the engines." Furthermore, Plaintiff contends that, without discovery, it is "too early" to make the determination that the installation of the engines had no part in the problems experienced with the engines. (Resp. at 2.)  In reply, Defendant states that Plaintiff's speculative argument does not meet the minimum pleading requirements and is inconsistent with the allegations of the Amended Complaint which indicate technical deficiencies with the components of the Caterpiller engines. (Reply at 2-3.)

The Court agrees with Defendant.  With respect to Plaintiff's statement that discovery is necessary to make the determination that installation of the engines had no part in the programs experienced with the engines, the Court notes that "[t]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists."

---

[3] It is unclear under what provision of the Magnuson Moss Act Plaintiff is proceeding. The citation to the Act in the Amended Complaint refers to class actions.  Plaintiff shall remedy this upon amendment.

Abrahams v. Young & Rubicam, 979 F. Supp. 122, 129 (D. Conn.1997) (quoting Stoner v. Walsh, 772 F. Supp. 790, 800 (S.D.N.Y.1991) (internal quotations marks omitted)); accord American Communications Ass'n, Local 10, I.B.T. v. Retirement Plan for Emp. of RCA Corp. and Subsidiary Cos., 488 F. Supp. 479 (S.D.N.Y.1980); see also Collins v. Walden, 834 F.2d 961, 965 (11th Cir.1987) ("filing a lawsuit is not a gratuitous license to conduct infinite forays in search of evidence"). Indeed, "discovery should follow the filing of a well-pleaded complaint" and "is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." Kaylor v. Fields, 661 F.2d 1177, 1184 (8th Cir.1981).

Moreover, the vast majority of the allegations of the Amended Complaint suggest that the problems with the engine rested with the internal components of the engine, and not the installation. Specifically, numerous paragraphs of the Amended Complaint explain that Motortech attempted repairs on the engines, which included using spare parts delivered to Motortech by Caterpiller, and two surveys of the engines were completed detailing the technical defects with the engines. (Am. Compl. ¶¶ 19-20, 23-32.) In contrast, the allegations of the Amended Complaint addressing installation problems state as follow:

> Almost immediately upon Plaintiff taking delivery of the Vessel, it was determined that the Engines *may not* have been installed properly on the Vessel and therefore the Vessel did not conform to the representations Defendant, Bertram made leading up to the sale and construction of the Vessel. (Am. Compl. ¶ 59.) (emphasis added)

> At the time the Vessel was delivered to Plaintiff, the Engines were not installed properly in the Vessel. (Am. Compl. ¶ 102.)

Noticeably absent, however, are any supporting facts alleging that Defendant's installation of engine was the cause of the engine's technical deficiencies. Furthermore, paragraphs 59 and 102 are inconsistent. The use of "may" in paragraph 59 suggests that the

installation of the engines might have been installed properly, whereas paragraph 102 definitely states the engines were not installed properly.

Thus, it is necessary for Plaintiff to amend the Amended Complaint to clarify whether he is alleging the engines were installed improperly in order to invoke the warranty clause,[4] assuming Plaintiff can do so, in good faith and within the parameters of Rule 11 of the Federal Rules of Civil Procedure.  Should Plaintiff amend, Plaintiff must be mindful that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal,129 S. Ct. at 1949. For example, Plaintiff must state whether the engines were not installed properly in the vessel and state that the improper installation was a cause of the engine's technical problems.  Of course, if Plaintiff cannot amend the Amended Complaint at this time, if he discovers evidence during the course of the proceeding which would allow him to state a valid warranty claim, he may seek leave of court to amend at that time.[5]

B.  Count two

With respect to the Florida Uniform Commercial Code claim, Defendant reiterates its arguments made with respect to count one: (1) Plaintiff has made an unsupported allegation regarding improper installation of the engine which is contrary to the overwhelming balance of the remaining allegations that the problem with the engine rested with its internal components

---

[4] Plaintiff does not appear to dispute that Defendant's liability on the warranty would have to be premised on an installation problem.

[5] If this occurs, Plaintiff would have to amend within the time frame set forth in the Court's Scheduling Order or show good cause pursuant to Rule 16 of the Federal Rules of Civil Procedure.

and (2) the only warranty alleged pertains to the engines and not the installation of the engines. The Court agrees, and based on the reasons stated in section III(A), Plaintiff is granted leave to amend.

####   C.  Counts four and five

Defendant moves to dismiss the claim for negligent misrepresentation and fraud in the inducement on the basis of the economic loss rule.  Specifically, Defendant contends Plaintiff is limited to contractual-based remedies because the Amended Complaint does not plead damage to other property or damages associated with personal injury.  (Mot. at 11-13.)  Plaintiff responds that claims for negligent misrepresentation and fraudulent inducement are exceptions to the economic loss rule. (Resp. at 5.)

In Indemnity Insurance Co. of North America v. American Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004), the Florida Supreme Court explained the two different circumstances to which the economic loss rule applies under Florida law: The first application, the "contractual privity economic loss rule" is when parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract. The rule is designed to prevent the parties from "circumventing the allocation of losses set forth in the contract" by making a claim for economic loss in tort. Id.; see also Allen v. Stephan Co., 784 So. 2d 456, 457 (Fla. Dist. Ct. App. 2000) (the economic loss rule bars recovery in tort where the act "complained of relates to the performance of the contract.").  "[C]ommercial parties are more than capable of protecting themselves against defective products by bargaining for such protection in their contracts." Tyco Safety Products Canada, Ltd. v. Abracon Corp., No. 08-80604-CIV, 2008 WL 4753728, at * 4 n.5 (S.D. Fla. 2008) (citing Jarmco, Inc. v. Polygard, Inc., 668 So. 2d 300 (Fla. Dist. Ct.

App.1996)).

The second application, the "products liability economic loss rule," applies when there is a defect in a product that causes damage to the product, but causes no personal injury or damage to other property. Indemnity Insurance, 891 So. 2d at 536-38. The "products liability economic loss rule" bars a tort cause of action where a product is involved, when the product damages only itself, and the losses are purely economic. See Abracon Corp., 2008 WL 4753728, at * 4 (citing Florida Power and Light Co. v. Westinghouse Electric Corp., 510 So.2d 899, 900 (Fla.1987)). The "other property" exception to the economic loss rule is limited to "property unrelated and unconnected to the product sold." Id. (citing Jarmco, Inc. v. Polygard, Inc., 668 So. 2d 300 (Fla. Dist. Ct. App.1996)).

Here, there is no dispute that this case does not concern a product liability action. This case does, however, turn on the various warranty agreements entered into among the parties. Thus, the contractual privity economic loss rule is germane to this discussion. The economic loss rule "has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla.1996). The Court must therefore examine and compare the allegations of the negligent misrepresentation and fraud in the inducement claims with the claims arising from the warranties.

In asserting the negligent misrepresentation claim against Defendant, the Amended Complaint states that Defendant "represented that Caterpiller's engines . . . would be fit for use

on the Vessel," were the "optimal fit" for the yacht and a "better option" than the standard

engine. (Am. Compl. ¶ ¶ 79-81.)  Likewise, the fraud in the inducement claim alleges that

Defendant "falsely represented that the engines were fit to be installed on the Vessel and knew or

should have known that this representation would induce Plaintiff to choose Caterpiller engines

to be installed on the Vessel." (Am. Compl. ¶ 88.)  Significantly, these same allegations are pled

in the breach of warranty claim as evidenced by the allegations that Defendant "represented that

the Vessel, with engines installed would conform with the promise that the Vessel would

function as was represented in all prior sales and construction meetings leading up to Plaintiff's

purchase of the Vessel."  (Am. Compl. ¶ 58.)  Thus, none of the acts complained of by Plaintiff

in the negligent misrepresentation and fraud in the inducement claims are independent from the

acts alleged in the breach of warranty claim.  See Royal Surplus Lines Ins. Co. v. Coachman

Indus., Inc., 184 Fed. Appx. 894 (11th Cir. 2006) (citing Indemnity Ins. Co. of N. Am. v. Am.

Aviation, Inc., 891 So. 2d 532 (Fla. 2004) (the economic loss rule does apply "where the parties

are in contractual privity and one seeks to recover damages in tort for matters arising from the

contract")); Premix–Marbletite Mfg. Corp. v. SKW Chems., Inc., 145 F. Supp.2 d 1348, 1358

(S.D. Fla. 2001) ("when the actions complained of relate directly to the subject matter of the

parties' agreement, or are interwoven with the agreement, no independent tort exists and the

economic loss rule applies"); Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 78

(Fla. Dist. Ct. App.1997) (when the misrepresentation is "inseparable from the essence of the

parties' agreement, the economic loss rule applies").  Given the similarities between the alleged

obligations under the warranty and the acts that Plaintiff identifies as constituting negligent

misrepresentation and fraud in the inducement, these claims, as pled, are barred under Florida

law.[6]

In view of the foregoing, the negligent misrepresentation and fraud in the inducement claims are dismissed.  The Court will, however, grant Plaintiff leave to amend these claims to cure the deficiencies outlined herein, assuming Plaintiff can replead these claims and allege, in good faith and subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure, tort claims separate and independent from the acts constituting the alleged breach of warranty.

D.  Count six

Count six alleges breach of implied warranty of merchantability and fitness for a particular purpose.  A cause of action for breach of implied warranty of merchantability requires that (1) the plaintiff was a foreseeable user of the product; (2) the product was used in the intended manner at the time of the injury; (3) the product was defective when transferred from the warrantor and (4) the defect caused the injury. Amoroso v. Samuel Friedland Family, 604 So.2d 827, 833 (Fla. Dist. Ct. App.1992).

To determine the elements for an action for breach of implied warranty of fitness for a particular purpose, it is helpful to examine the applicable Florida Statute:

---

[6] Moreover, the Amended Complaint fails to allege that Defendant knew the representations it made were false, as required for a claim for fraud in the inducement, and fails to allege that Plaintiff's reliance was justified, as required for the negligent misrepresentation claim.  See Brinker v. W.P. McDevitt & Associates, Inc., 693 So. 2d 712, 712 (Fla. Dist. Ct. App. 1997) (fraud in the inducement); Lou Bachrodt Chevrolet, Inc. v. Savage, 570 So. 2d 306, 308 (Fla. Dist. Ct. App. 1990) (fraud in the inducement); Specialty Marine & Industrial Supplies, Inc. v. Venus, — So. 3d —, 2011 WL 479912, at * 3 (Fla. Dist. Ct. App. Feb. 11, 2011) (negligent misrepresentation); Rocky Creek Retirement Properties, Inc. v. Estate of Fox, 19 So. 3d 1105, 1110 (Fla. Dist. Ct. App. 2009) (negligent misrepresentation).  Therefore, should Plaintiff choose to amend these counts, Plaintiff must remedy these pleading deficiencies.

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Florida Statute § 672.315.  "A plaintiff must prove that the defendant, at the time the sale was made, knew of a particular purpose for which the goods were going to be used and that the plaintiff relied upon the defendant's skill and judgment when purchasing said product." Crawford v. Gold Kist, Inc., 614 F. Supp. 682, 687 (M.D. Fla. 1985) (citing Fletcher Company v. Melroe Manufacturing Company, 238 So.2d 142 (Fla. 1970)); see Weiss v. PPG Industries, Inc., 148 F.R.D. 289, 293 (M.D. Fla. 1993); Czarnecki v. Roller, 726 F. Supp. 832, 843 (Fla. Dist. Ct. App. 1989); see also Royal Typewriter Co. v. Xerographic Supplies Corp., 719 F.2d 1092, 1100 (11th Cir.1983) ("[a] 'particular purpose' differs from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his business.")

"[A] plaintiff cannot recover economic losses for breach of an implied warranty in the absence of privity."  Brophy v. DaimlerChrysler Corp., 932 So. 2d 272, 274 (Fla. Dist. Ct. App. 2005) (quoting Cerasani v. Am. Honda Motor Co., 916 So. 2d 843 (Fla. Dist. Ct. App. 2005)); see Cruz v. Mylan, Inc., No. 8:09-CV-1106-T17-EAJ, 2010 WL 598688, at * 1 (M.D. Fla. Feb. 17, 2010) (citing Kramer v. Piper Aircraft Corp., 520 So.2d 37, 39 (Fla.1988)); Mesa v. BMW of N. Am., LLC, 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005); Westinghouse Corp. v. Ruiz, 537 So.2d 596, 596-97 (Fla. Dist. Ct. App. 1988).

After reviewing count six, the Court finds that these claims are conclusory and must be re-plead.  For example, Plaintiff has not distinguished between the different elements for these claims.  Nor has Plaintiff provided supporting facts or demonstrated privity. Lastly, Plaintiff must

13

plead each of these claims in separate counts.  The Court will allow Plaintiff leave to cure these

deficiencies.

      <u>IV.  Conclusion</u>

      Accordingly, it is hereby **ORDERED AND ADJUDGED** that  Defendant Bertram

Yacht, Inc.'s Motion to Dismiss Amended Complaint (DE 31) is **GRANTED**.  Plaintiff is given

leave to amend the Amended Complaint **within 14 days of the date of entry of this Order**.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 9th  day of August, 2011.

                            _____

                            KENNETH A. MARRA
                            United States District Judge