UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

DRAGUTIN PAVLETIC,

        Plaintiff(s),

vs.

CATERPILLAR, INC.,

        Defendant(s)

                                  /

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

## DEFENDANT CATERPILLAR INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

Defendant Caterpillar Inc. ("Caterpillar") files this motion for summary judgment and incorporated memorandum of law pursuant to Fed.R.Civ.P. 56 and S.D. Fla. L.R. 56.1.

### I. Introduction

As set forth in Caterpillar's Statement of Undisputed Material Facts (DE 58) filed in conjunction with this motion, there are material, undisputed facts that Caterpillar fully complied with the terms and conditions of Caterpillar's Limited Warranty entitling Caterpillar to judgment as a matter of law on Plaintiff, Dragutin Pavletic's, remaining counts[1] for violation of the Magnuson-Moss Warranty Act ("MMWA") and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Pavletic's own testimony establishes that Caterpillar fully complied with the terms

---

[1] This Court found Pavletic's claim for violation of FDUTPA turns solely upon whether Caterpillar complied with its Limited Warranty when it dismissed Pavletic's claims for negligent misrepresentation, fraudulent inducement, breach of express and implied warranty on December 21, 2011 (Order, DE 54, p. 8)

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

and conditions of its warranty during both the standard and extended warranty period. Pavletic's complaint, for which Pavletic admits this lawsuit regards, occurred some four months after the Caterpillar Limited Warranty's *standard* warranty period expired and does not fall within the scope of the extended warranty period. Because both Pavletic's MMWA and FDUTPA claims are indisputably based upon Caterpillar's alleged breach of the standard warranty that had expired, Caterpillar is entitled to summary judgment as a matter of law.

## II. Argument

### A. Standard For Summary Judgment

Summary judgment is proper when "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The purpose of summary judgment is to dispose of unsupported claims or defenses which, as a matter of law, do not raise issues of material fact suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When confronted with a motion for summary judgment, the Court should not "[w]eigh the evidence and determine the truth of the matter," but the Court should "[d]etermine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party has met its burden of demonstrating to the Court that there is no genuine issue of material fact that should be decided at trial, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 (1986). The non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts,

Case 0:11-cv-60484-KMW   Document 59   Entered on FLSD Docket 03/30/2012   Page 3 of 12

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

through affidavits or other forms of evidence provided for by the rules. *Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The question then becomes "[w]hether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 252. A genuine issue of material fact exists where there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. *See Cohen v. United Am. Bank*, 83 F.3d 1347, 1349 (11th Cir. 1996).

Caterpillar is entitled to summary judgment under this standard because there is no genuine issue of material fact that Caterpillar fully complied with all terms and conditions of its Limited Warranty. Each and every time Pavletic presented Caterpillar with a claim under Caterpillar's Limited Warranty during the applicable warranty period Caterpillar, at its own expense, provided repaired or replacement parts to correct any issue as well as other items and labor in accordance with the terms and conditions of its Limited Warranty. Pavletic, in the case *sub judice*, claims Caterpillar breached its Limited Warranty when it failed to provide replacement engines following Pavletic's submission of a warranty claim in November 2009. It is undisputed that Plaintiff took delivery of the subject C7 Caterpillar engines on July 11, 2007 in Pula, Croatia. The terms and conditions of the Limited Warranty state the standard warranty period expires within 24 months of delivery to the first user (Pavletic) or on July 11, 2009. Therefore, Pavletic's warranty claim submitted in November 2009 falls outside of the standard warranty period and outside the scope of the extended warranty.

**B.     Pavletic's MMWA and FDUTPA claims are based upon alleged breach of Caterpillar's Limtied Warranty**

Pavletic bases his claims for violation of the MMWA and FDUTPA upon breach of Caterpillar's Limited Warranty attached as Exhibit "B" to what remains of Pavletic's Second Amended Complaint (DE 44). As this Court will recall, Pavletic's counts for breach of express and

3
SEDGWICK LLP
ATTORNEYS FOR CATERPILLAR

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

implied warranty, negligent misrepresentation and fraudulent inducement were properly dismissed on December 21, 2011 (DE 54).

In support of his MMWA claim, Pavletic alleges the Caterpillar engines "suffered multiple defects that are expressly covered by the terms of the warranty given by Defendant Caterpillar." (2d Am. Compl., DE 44, ¶ 45)  Pavletic further alleges Caterpillar has been "unable, unwilling and/or has refused to conform the Engines to the written warranty by repairing multiple nonconformities within a reasonable number of attempts or a reasonable amount of time." *Id.* at ¶ 46.

In support of his FDUTPA claim, Pavletic alleges Caterpillar's representation "that the engines held a valid warranty...and that any repairs coming under the scope of the warranty would be repaired within a reasonable amount of time" were untrue. *Id.* at ¶ 61, 63.  Pavletic states Caterpillar "had an obligation under its written warranty and avoided and/or attempted to avoid its obligations thereunder." *Id.* at ¶ 64.

Therefore, Pavletic's claims under MMWA and FDUTPA turn upon the extent to which Caterpillar complied with its Limited Warranty.  If the warranty was complied with, then Caterpillar is entitled to summary judgment as a matter of law as Pavletic would be unable to establish Caterpillar breached its warranty.

**C.     Caterpillar Fully Complied with the Terms and Conditions of its Limited Warranty**

As established by Pavletic's deposition testimony on October 21, 2011, there are no genuine issues of material fact as to the application of Caterpillar's Limited Warranty and its full compliance with the terms and conditions therein.  Therefore, Caterpillar is entitled to summary judgment as a matter of law.

Pavletic signed a contract for the sale of a Bertram 360 Open with Bertram specifying two

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

Caterpillar C7 engines to be installed in the new vessel. (Caterpillar Stmt of Material Facts, DE 58, ¶ 1 – 2). Pavletic took delivery of the engines on July 11, 2007. *Id*. at ¶ 10. In accordance with the terms of the Caterpillar Limited Warranty, the standard warranty period for new C7 marine propulsion engines used in non-revenue producing pleasure craft provided to Pavletic, Caterpillar agreed to:

   a. Provide (at Caterpillar's choice) new, remanufactured or Caterpillar-approved repaired parts or assembled components needed to correct the defect;

   b. Replace lubricating oil, filters, antifreeze, and other service items made unusable by the defect;

   c. Provide reasonable or customary labor needed to correct the defect, including labor to disconnect the product from and reconnect the product to its attached equipment, mounting, and support systems, if required; and

   d. Provide travel labor up to six hours round trip including reasonable mileage (per repair) if, in the opinion of Caterpillar, the product cannot reasonably be transported to a place of business of a Caterpillar dealer or other source approved by Caterpillar.

*Id*. at ¶ 4. As demonstrated below, Caterpillar complied (i.e., did not breach), with its warranty on each claim presented by Pavletic during the standard warranty period.

First, in June 2008, Pavletic experienced a high temperature alarm while operating his vessel. *Id*. at ¶ 11. Caterpillar's representative attended a sea trial and the cylinder head on the engine was replaced pursuant to Caterpillar's obligations under the written warranty. *Id*. at ¶ 12-14. Thereafter, a second sea trial was conducted and no condition which had been observed in the first were observed again. *Id*. at ¶ 15-16. Pavletic did state, during his deposition, the diagnostic system

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

reported varying (fuel) consumption rates on the cylinder heads, but no defects in material. *Id*. at ¶ 17.

Second, in August 2008, high temperature alarms were again experienced. *Id*. at ¶ 19. Subsequently, Caterpillar's representative chemically cleaned the port and starboard aftercoolers and all alarms disappeared. *Id*. at ¶ 20. There were no more problems with the engines after the aftercoolers were cleaned. *Id*. at ¶ 21. The only two issues Pavletic wanted addressed were a synchronization issue (both engines running at the same speed) and for Caterpillar to extend the warranty on the port engine; again no defect in materials as required under Caterpillar's Limited Warranty. *Id*. at ¶ 22.

Next, in late 2008 Caterpillar resolved an issue with the main engine's alternator. *Id*. at ¶ 23. Again, under the auspices of Caterpillar's Limited Warranty. Importantly, all these issues were repaired or provided under the terms and conditions of Caterpillar's Limited Warranty and during the *standard* warranty period.

Finally, and unfortunately, Pavletic experienced problems with the port main engine in November 2009. Importantly, and fatal to Pavletic's claims in this case, the November 2009 issue arose during the Limited Warranty's *extended* warranty period. The extended warranty, applicable during the first 60 months from the date of delivery to the first user, "*only and applies solely to the following engine components*: cylinder block casting, crankshaft, connecting rod assemblies, cylinder head casting, camshaft, flywheel housing, flywheel, timing gear cover/housing, crankshaft gear, timing gears, camshaft gear, accessory drive gears, jacket water pump housing, oil pan, exhaust manifold, intake manifold and engine oil cooler housing." *Id*. at ¶ 6 (emphasis supplied). According to Pavletic's testimony and that of the technical individuals he retained, the November 2009 problem

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

was found to be within the aftercoolers. *Id.* at ¶ 25. Though detailed and fairly exhaustive, glaringly absent from the list above is mention of the aftercooler or any of its components. Thus, the alleged aftercooler problem in November 2009 was not included within the covered components of Caterpillar's extended warranty. Because the standard warranty period had expired, Pavletic's claims are simply not covered under the terms of the warranty (standard or extended).

**D.      Pavletic's MMWA Claims Fail Due to Caterpillar's Warranty Complaince**

In Count I of his Complaint Pavletic seeks damages from Caterpillar for alleged "failure to comply with its express written warranty terms" pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (2d Am. Compl., ¶¶ 39-47) The MMWA sets forth various remedies in consumer disputes. 15 U.S.C. § 2310 specifically allows a consumer, such as Pavletic, to intiate a civil action for damages: "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, *or under a written warranty*...may bring suit for damages and other legal and equitable relief."

With respect to Caterpillar's violation of the MMWA, Paveltic's allegations center solely around Caterpillar's alleged failure to comply with the warranty. But as set forth in detail above, there are undisputed, genuine material facts Caterpillar fully complied with the terms and conditoins of its express written warranty. When Caterpillar was presented with alleged warranty claims in 2008 (for high temperature alarms and alternators) it fully complied with the terms and conditions of its Limited Warranty within the standard warranty period by repairing or replacing these items – even going so far as to chemically clean the aftercoolers. But when Pavletic experienced problems with the aftercooler in November 2009 – during the extended warranty period – Caterpillar did not cover the claim as the scope of the extended warranty did not afford coverage for the aftercooler or

7

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

its related components. Therefore, Caterpillar did not violate MMWA because it complied with its Limited Warranty. As such, Caterpillar, is entiteld to summary judgment as a matter of law. *Progressive Northern Ins. Co. v. Therm Techonlogy Corp.*, Case No. 8:06-cv-1252-T-30MSS, 2007 WL 4557206 (M.D. Fla. Dec. 21, 2007) (granting summary judgment to manufacturer when fire occurred after expiration of warranty); *Richter v. Monaco Coach Corp.*, 5:08-cv-207-Oc-10GRJ, 2009 WL 1537894 (M.D. Fla. June 2, 2009) (granting summary judgment to manufacturer where manufacturer repaired or replaced allged defects within a reasonable number of attempts).

**E.     Pavletic's FDUTPA Claims Fail Due to Caterpillar's Warranty Compliance**

Similarly, Paveltic's claim under FDUTPA fails. As set forth by this Court, "Pavletic's FDUTPA claim is that Caterpillar issued a written warranty offering to make repairs within a reasonable amounts of time, Caterpillar avoided its obligations [under the written warranty] and Pavletic suffered damages as a result." (Order, DE 54, p. 8) This Court further noted that Pavletic's FDUTPA allegations also include that "Caterpillar's representation that the Engines were fit for their intended purposes was untrue, [D.E. 44 ¶ 62]; but as discussed above, Pavletic does not sufficiently allege that Caterpillar ever made such a representation." *Id*. at p. 8. Thus, Pavletic's FDUTPA claim also hinges upon Caterpillar's compliance with its warranty. As discussed *supra*, Pavletic's own deposition testimony establishes Caterpillar fully complied with the terms and conditions of the Caterpillar Limited Warranty; therefore, Pavletic's FDUTPA claim fails as a matter of law.

Furthermore, assuming, *arguendo*, Pavletic's FDUTPA claim was based on something more than the warranty, his undisputed deposition testimony demonstrates there was nothing untrue or misleading about any of the materials Pavletic reviewed prior to choosing Caterpillar's engines. Other than the warranty discussed, *supra*, Pavletic admitted he only relied upon information he

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

gathered through Caterpillar's website when deciding to choose the C7 engines ultimately installed on the vessel he purchased. (Caterpillar Stmt of Material Facts, DE 58, ¶ 28 – 29). Pavletic did not find anything he reviewed and relied upon from Caterpillar's website to be untrue. *Id*. at ¶ 30.

"The FDUTPA is a creature of Florida law." *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1342 (S.D. Fla. 2011). The Florida Supreme Court has not set forth the elements of a cause of action of a FDUTPA claim; thus, the decision of the Florida District Courts of Appeal must guide this Court's analysis. *Id*. at 1342 (citing *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F. 2d 678, 690 (11th Cir. 1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.") A "claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Tracfone Wireless, Inc. v. GSM Group, Inc.*, 555 F. Supp. 2d 1331,1337 (S.D. Fla. 2008) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). "A deceptive act is one that is likely to misled consumers." *Id*. at 1337 (quoting *David v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000)). Here, Pavletic's own deposition testimony fails to establish a FDUTPA claim as Pavletic readily admits nothing about the information on Caterpillar's website was untrue (i.e., misleading). Therefore, non-existence of an issue of material fact as to Pavletic's FDUTPA claim, Caterpillar is entitled to Summary Judgment as a matter of law.

Finally, FDUTPA provides that in "any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs." Fla. Stat. § 501.211 (2); *Jovine*, 795 F. Supp. 2d 1331 at 1344. "For the purposes of recover under FDUTPA, actual damages do not include consequential damages." *Jovine*, 795 F.

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

Supp. 2d 1331 at 1344 (quoting *Eclipse Med. Inc. v. Am. Hydo-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999) (citing *Nyquist v. Randall*, 819 F. 2d 1014, 1017 (11th Cir. 1987))). In this case, Pavletic seeks not just compensatory damages of the full purchase price of both engines, but "incidental and consequential damages, collateral damages, and any and all finance charges incurred therewith." (2d Am. Compl., p. 10). Such damages are specifically prohibited by the FDUTPA and the District Courts of Appeal of Florida. Therefore, Caterpillar is entitled to Summary Judgment as to these damages as a matter of law.

F.  **Pavletic's Claim for Reimbursement of Replacing Both Engines Must Fail**

Assuming, *arguendo*, that Pavletic could establish the aftercooler on the port engine falls within the narrow scope of covered components during the extended warranty period, Pavletic must, at least, be limited to recovery for expenses incurred in replacing the port engine only. While the undisputed material facts are such that Caterpillar fully complied with its obligations during the standard and extended warranty period with respect to both engines, the facts also support Pavletic only experienced a problem for which he basis the instant claim on with his port engine. Pavletic's claim centered around the November 2009 total loss of the *port*, not starboard, main engine. . . (Statement of Material Facts, DE 58, ¶ 24). Indeed, Pavletic explained, during his deposition, that it was only after the vessel was at an Italian repair yard that he chose, voluntarily, to replace the starboard main engine as well. *Id*. at ¶¶ 27 – 28. Therefore, summary judgment with respect to Pavletic's claim for reimbrusement of expenses related to the starboard engine is warranted.

**III. Conclusion**

The undisputed, material facts mandate summary judgment in Caterpillar's favor. Pavletic's deposition testimony establishes that during the standard warranty period Caterpillar fulfilled its

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

obligations under the Caterpillar Limited Warranty by repairing or replacing any alleged defective components.  Following the expiration of the standard warranty period, in November 2009, Pavletic experienced problems with an aftercooler on the port engine (only).  Thus, the aftercooler claim on the port engine is not covered under Caterpillar's standard warranty.  Pavletic's port engine aftercooler issues occurred during the extended warranty period, but the aftercooler and its components are not within the extended warranty's scope of coverage.  Therefore, Caterpillar's Limited Warranty does not cover Pavletic's claim aftercooler damage on the port engine nor, in any event, a claim for damage on the starboard engine.  As such, Caterpillar is entitled to summary judgment as a matter of law.

WHEREFORE, the Defendant, Caterpillar Inc., respectfully requests this Honorable Court enter an Order granting this, its Motion for Summary Judgment and for such other and further relief as this Honorable Court deems just and appropriate under the circumstances.

Respectfully submitted,

**SEDGWICK LLP**
Attorneys for Caterpillar
2400 E. Commercial Blvd., Suite 1100
Fort Lauderdale, FL 33334
ph-954.958.2500 // fx-954.958.2513

By:    */s/ Charles S. Davant*_____
         Kenneth W. Waterway
         Florida Bar No. 0994235
         ken.waterway@sedgwicklaw.com
         Charles S. Davant
         Florida Bar No. 15178
         charles.davant@sedgwicklaw.com

CASE NO. 11-CV-60484-WILLIAMS/SELTZER

This constitutes the CERTIFICATE OF SERVICE for this submission, which, through the CM/ECF system for the Southern District of Florida, is being filed and served on 30th day of March, 2012, to William F. Clair, P.A., Attorneys for Plaintiff, 1221 Brickell Avenue, Suite 900, Miami, Florida 33131.

By:   /s/ *Charles S. Davant*
       Charles S. Davant

01017-000463\263\csd